IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PHILIP A. MEADE,

   Plaintiff,

  v.

FORD MOTOR COMPANY,

   Defendant.

CIVIL ACTION FILE
NO. 1:09-CV-1833-TWT

ORDER

This is a property damage action. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 100]. For the reasons set forth below, the Court GRANTS the Defendant's Motion for Summary Judgment.

I. Background

The Defendant, Ford Motor Company ("Ford"), manufactured the Ford F-150 truck. The Ford F-150 truck has a Speed Control Deactivation Switch ("SCDS"), which is a hydraulic pressure switch that functions as a redundant safety switch to interrupt power to the speed control system during brake applications in cruise control operation. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. E, at 3.) The SCDS in the Ford F-150 and some other Ford models has allegedly caused vehicle fires that

started while the vehicles were parked and the ignitions were off. (Id. at 2.) Concerned about the safety of the Ford F-150 and other vehicles with a high SCDS failure rate, Ford recalled over 730,000 vehicles in January 2005. (Id.) Ford sent six recall notices related to the SCDS to the Plaintiff's home between September 2005 and April 2008. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., Ex. M, at 4-6.) There is no evidence before the Court that the Plaintiff took any action regarding these notices.

The Plaintiff, Philip Meade, owned a 2001 Ford F-150, which he purchased brand-new in September 2000. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 2.) Meade returned home in his Ford F-150 on the night of August 24, 2008. (Meade Dep. at 15.) He parked the truck in the garage around 8:30 p.m. and went to bed around 11:00 p.m. (Id.) On the morning of August 25, 2008, Meade awoke to the sound of his smoke alarm going off. (Id. at 14.) In the garage he saw flames rolling over the hood of his Ford F-150. (Id. at 14-15.) He called the fire department and stood outside his house while the fire spread. The Plaintiff claims that the total damage from the fire was in excess of $140,000.00. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 1.)

The Plaintiff's two experts, A.W. Durham ("Durham") and Jeffrey T. Morrill ("Morrill"), investigated the cause of the accident. Durham and Morrill both

concluded that the SCDS caused the fire. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Exs. C-D.) However, neither expert states that the SCDS was defectively designed. (Id.)

The Plaintiff sued Ford in Fulton County Superior Court on May 20, 2009 [Doc. 1, Ex. A]. The Plaintiff asserted counts of strict liability, negligence, breach of warranty, punitive damages, and stubborn litigiousness [id.]. The Defendant removed the case to this Court on July 8, 2009 [Doc. 1]. On July 14, 2009, the Defendant moved to have the case transferred to the United States Judicial Panel on Multidistrict Litigation ("MDL") [Doc. 4], which was granted on August 10, 2009 [Doc. 6]. The case was transferred to the MDL on December 3, 2009 [Doc. 7].

The plaintiffs in the MDL filed a Fourth Amended Master Complaint ("Complaint"), which is now the operative complaint for this case. The Complaint supersedes Meade's previously-filed complaint. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., Ex. B, at 9.) The Complaint did not assert causes of action for breach of warranty or stubborn litigiousness, so these claims do not survive. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., Ex. C.) After an unsuccessful mediation, the Plaintiff's case was sent back to this Court [Doc. 76]. The Defendant's Motion for Summary Judgment [Doc. 100] asks the Court to dismiss the remaining claims of strict liability, negligence, and punitive damages.

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Strict Liability

"Plaintiff must proffer direct, competent evidence of the existence of a design or manufacturing defect" to survive summary judgment. Gillis v. Toyota Motor Corp., No. 1:00-CV-3409CC, 2002 WL 34396718, at *5 (N.D. Ga. Jan. 22, 2002). "In a product liability case, only experts may offer competent evidence of a defect because the existence of a design or manufacturing defect is not an inference a jury can reasonably draw solely from human experience." Id. Because the alleged design

defect of the SCDS is not "one that can be understood by the reasonable juror," expert testimony is required. Bailey v. Monaco Coach Corp., 350 F. Supp. 2d 1036, 1045 (N.D. Ga. 2004). Even the Plaintiff's expert Mr. Durham testified that he "reach[ed] an area where [he felt] like [he was] at the end of [his] limit of expertise, which...can happen easily now in a manufactured vehicle because of the complexity of the vehicles." (Durham Dep., at 68.)

The Plaintiff's expert testimony is insufficient to survive summary judgment. Neither of the Plaintiff's experts testified that the 2001 Ford F-150 was defectively designed (or that the Plaintiff's truck was defectively manufactured). Morrill concludes that "the SCDS has internally failed and is the causative agent for this fire" (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. D) and Durham, after consultation with Morrill, agrees. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. C) However, neither expert states that the SCDS failure was the result of a design or manufacturing defect. This testimony is insufficient evidence to prove a design defect.

SCDS failure alone is not evidence of a design defect. See Stanley v. Toyota Motor Sales, U.S.A., Inc., 3:07-CV-08CDL, 2008 WL 4664229, at *2 (M.D. Ga. Oct. 20, 2008) ("Georgia courts have squarely rejected the argument that the failure of a mechanical system is itself evidence of an original defect in the product."). Even if

the SCDS caused the fire, that is not evidence that it was defective when the Plaintiff purchased the truck several years earlier. See, e.g., Jenkins v. General Motors Corp., 240 Ga. App. 636, 637 (1999) ("The failure of the brakes in this instance is not evidence that the brakes were defective when Jenkins leased the truck."). Several years after the truck was purchased there are alternative possible explanations for a fire emanating from the SCDS rather than simply that the SCDS was defectively designed, such as improper use or maintenance.

The Plaintiff offers the following extrinsic evidence supporting his claim that the 2001 Ford F-150 truck was defectively designed: a National Highway Traffic and Safety Administration report (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. E) and a Ford investigative report (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. H), each discussing the propensity of the SCDS to start a fire. Neither report is admissible evidence in the absence of independent proof that the Plaintiff's truck had the same defect. These reports are similar to recall letters in that they generally discuss problems with a product but do not discuss the Plaintiff's particular product; these recall letters have been held inadmissible in the absence of independent proof that the Plaintiff's product suffers from the same defect. See, e.g., Bailey v. Monaco Coach Corp., 350 F. Supp. 2d 1036, 1045 (N.D. Ga. 2004) ("[a] recall notice alone is irrelevant without independent proof that [the plaintiff's] brakes suffer from the same

defect."); Harley-Davidson Motor Co. v. Daniel, 244 Ga. 284, 286 (1979) ("The recall letter is admissible as long as there is first introduced some independent proof that the particular product in question suffered from the same defect. The recall letter alone is insufficient to create a jury issue of the presence of such a defect in the product.").

The Plaintiff also attempts to survive summary judgment by performing a risk-utility analysis in order to show that the truck was defectively designed, but this also fails without expert testimony. The Plaintiff discusses alternative designs but does not have an expert to explain why these designs are better than the Defendant's design. "When faced with a summary judgment motion, Plaintiffs have the burden to demonstrate a genuine issue of material fact that [the product] is defectively designed; to do this, they must produce evidence from an expert who is qualified to conduct the risk-utility analysis and to opine that the risks inherent in [the product's] design outweigh the utility or benefit derived from the product." In re Mentor Corp. ObTape Transobturator Sling Products Liab. Litig., 711 F. Supp. 2d 1348, 1365 (M.D. Ga. 2010). The strict liability claim is dismissed.

    B.    <u>Negligence</u>

The Plaintiff has failed to provide sufficient evidence supporting his assertion that the Ford F-150 was defectively designed. The Plaintiff does not assert that the

Defendant has breached any other duty owed to him. Therefore, the negligence claim is dismissed as well.

    C.    <u>Punitive Damages</u>

As the underlying claims of strict liability and negligence have been dismissed, punitive damages recovery is inappropriate. This claim is also dismissed.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 100].

SO ORDERED, this 20 day of September, 2011.


        /s/Thomas W. Thrash
        THOMAS W. THRASH, JR.
        United States District Judge